IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SAMUEL ANTONIO ALCALA-GARCIA, § § | |
| Petitioner, § § | |
| V. § § | No. 3:25-cv-3536-S-BN |
| KRISTI NOEM, in her official capacity § as Secretary of the Department of § Homeland Security, ET AL., § § | |
| Respondents. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

Petitioner Samuel Antonio Alcala-Garcia ("Alcala"), while detained at the Prairieland Detention Center, a facility in this district, filed this habeas action under 28 U.S.C. § 2241 on December 24, 2025 with the assistance of counsel, arguing at least that his detention by immigration authorities without a bond hearing violates both the Immigration and Nationality Act ("INA") and the due process clause of the United States constitution, and requesting a temporary restraining order ("TRO") and declaratory and injunctive relief. *See* Dkt. No. 1.

The presiding United States district judge referred this habeas action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

After reviewing Alcala's initial filings in this case, the undersigned determined that service and an expedited response from the United States Attorney's Office were required. *See* Dkt. No. 3. A response was filed. *See* Dkt. Nos. 7 & 8. But Alcala did not

file a reply by January 16, 2026, the deadline to do so. *See* Dkt. No. 3.

And, for the reasons discussed below, the Court should grant in part the habeas petition [Dkt. No. 1].

## Applicable Background

Alcala alleges that he

> is a thirty-three-year-old citizen of Venezuela who has resided in the United States since his lawful parole into the country in early September 2022. After being apprehended by DHS near the United States–Mexico border on or about September 3, 2022, he was inspected, processed, and released into the United States on parole under INA § 212(d)(5). He has continuously lived in the United States since that date and has established his home and community here.
> Until his recent transfer to the remote Prairieland Detention Center in Alvarado, Texas, Mr. Alcala had lived and worked in the West Texas community for several years, application that has conferred lawful presence and permitted him to remain in the United States while his claim is adjudicated. During this time, he established deep ties to his community and consistently complied with the requirements of both USCIS and ICE. He has no history of violence and no disqualifying criminal convictions that would justify treating him as a danger to the community or warrant the imposition of continued detention.
> On or about October 22, 2025, ICE apprehended Mr. Alcala during his regularly scheduled check-in in El Paso County, Texas. Shortly thereafter, the Department of Homeland Security ("DHS") served him with a Notice to Appear ("NTA"), alleging removability under INA § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)] on the theory that he entered the United States without inspection – even though DHS had previously inspected, processed, and paroled him into the country in September 2022, and notwithstanding his approved I-130 family-based petition.

Dkt. No. 1 at 5-6 (citation omitted).

In October 2025, Alcala did not receive a bond hearing. *See id.* 6-7.

The government's response, filed January 12, 2026, does not refute these

allegations but adds that Alcala was "set for an Individual hearing before the Houston Immigration Court via WebEx on January 15." Dkt. No. 8 at 6.

The government has not updated the Court since. So the undersigned will assume that Alcala remains in custody in the United States.

## Legal Standards and Analysis

This habeas action is another in a what has become a tsunami of similar actions filed after the Board of Immigration Appeals ("BIA") eliminated the ability of immigration judges ("IJs") to make individualized bond determinations as to certain persons placed in removal proceedings. *See, e.g.*, Kyle Chaney, *Hundreds of judges reject Trump's mandatory detention policy, with no end in sight* (Jan. 5, 2026, 5:55 AM), https://www.politico.com/news/2026/01/05/trump-administration-immigrants-mandatory-detention-00709494 (noting that, at the time of publication, judges had ruled against the administration in more than 1,600 cases); Kyle Chaney, *Judges, inundated with immigration cases, don't mince words on ICE tactics* (Jan. 26, 2026, 11:31 AM), https://www.politico.com/news/2026/01/26/minnesota-immigration-cases-ice-00746275 (noting that its "analysis has identified 347 judges across the country who have rejected the administration's detention policy – in more than 2,400 cases – while just 20 judges have sided with the administration, a small minority that has nevertheless grown in recent weeks").

As background,

[t]wo statutes in the [INA] principally govern [these] detention[s]: 8

> U.S.C. §§ 1225 and 1226. Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond or conditional parole.'" *Id.* (citation modified). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)). Hence, "noncitizens detained under section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *See, e.g.*, *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1306 (W.D. Wash. 2025).

*Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *2 (S.D. Tex. Oct. 8, 2025) (cleaned up).

And "[t]he principal issue" in these cases "is whether [the habeas petitioner] has been erroneously categorized as a detainee subject to 8 U.S.C. § 1225(b)(2), which prescribes mandatory detention during removal proceedings, or if he [or she] is subject to 8 U.S.C. § 1226(a), which provides for discretionary detention and a bond hearing regarding whether the noncitizen is a flight risk or poses a danger to the community." *Id.*

Against this background, the undersigned turns to Alcala's request for relief.

## I. Exhaustion of Administrative Remedies

While Respondents do not appear to argue that the Court should deny Alcala's

claims because he has not exhausted administrative remedies, *see generally* Dkt. No. 7, the undersigned finds that Alcala need not exhaust administrative remedies before the Court may properly consider his current claims, *see, e.g.*, *Parada-Hernandez v. Johnson*, No. 3:25-cv-2729-K-BN, 2025 WL 3465958, at *2-*3 (N.D. Tex. Oct. 29, 2025), *rec. accepted*, 2025 WL 3463682 (N.D. Tex. Dec. 2, 2025).

## II. The INA

The undersigned finds first that detaining Alcala without a bond hearing under Section 1225(b) violates the INA for the reasons succinctly explained in *Covarrubias*, 2025 WL 2950097, at *2, which, in turn, relied on almost every other federal district court in this circuit and elsewhere that has tackled this issue:

> [Alcala] contends that he is being detained under Section 1226(a) and should have a bond hearing, but Respondents argue that he is subject to mandatory detention under Section 1225(b)(2), and therefore, not entitled to a bond hearing.
> 
> The difference in interpretation emanates from the Government's recent reevaluation of immigration detention authority. The Department of Homeland Security (DHS) and Department of Justice (DOJ) released interim guidance on July 8, 2025, announcing a new legal position on detention and release authorities. The guidance interprets INA Section 235 (8 U.S.C. § 1225) as applying to the detention of all "applicants for admission," including all noncitizens who have not been admitted, whether or not they arrive at a port of entry…..
> 
> [W]hether [Alcala] falls under Section 1226(a) or 1225(b)(2) is a matter of statutory interpretation. Statutory interpretation is the province of the courts, not agencies. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024).
> 
> The [undersigned] finds that Section 1226, not Section 1225, applies to [Alcala's] detention. As almost every district court … has concluded, "the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades" support application of Section 1226. *Buenrostro-Mendez v. Bondi*, No. H-25-

> 3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) (collecting cases).

*Id.* at *3 (cleaned up); *see also Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("The court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement. The respondents have failed to provide controlling authorities or persuasive reasons that would justify reaching a different result. Section § 1226(a), not § 1225(b), applies to [the petitioner]." (cleaned up)); *accord George v. Noem*, No. 3:25-cv-2935-S-BW, 2025 WL 3852946, at *4 (N.D. Tex. Dec. 19, 2025), *rec. accepted*, 2026 WL 30829 (N.D. Tex. Jan. 6, 2026).

The undersigned does acknowledge authority in this district reaching a different result, but that authority is neither binding nor persuasive. *See P. B. v. Bergami*, No. 3:25-cv-2978-O, 2025 WL 3632752, at *3-5 (N.D. Tex. Dec. 13, 2025); *Garibay-Robledo v. Noem*, No. 1:25-cv-177-H, ___ F. Supp. 3d ____, 2026 WL 81679, at *3-9 (N.D. Tex. Jan. 9, 2026).

And the undersigned does note that, while the United States Court of Appeals for the Fifth Circuit has not ruled on this issue, the Seventh Circuit recently rejected the government's argument, in the context of a motion to stay pending appeal, finding that Section 1226(a) applies to noncitizens discovered within the country. *See Castañon-Nava v. U.S. Dep't Homeland Sec.*, 161 F. 4th 1048, 1061 (7th Cir. 2025) (holding ICE and DHS were "not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject

to mandatory detention under § 1225(b)(2)(A)").

### III. Procedural Due Process

#### A. Availability of Procedural Due Process Protections

The undersigned also finds that detaining Alcala without a bond hearing violates his Fifth Amendment rights. *Accord George*, 2025 WL 3852946, at *4-*6.

In this case, Respondents do not seem to elect to expressly rely on *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), to oppose Alcala's due process arguments.

Regardless, because the undersigned finds that Alcala is erroneously categorized as detained under Section 1225(b)(2), the Court should reject Respondent's related argument that, because Section 1225 "says nothing 'whatsoever about bond hearings' … [n]o procedural due process claim is stated." Dkt. No. 7 at 25 (quoting *Jennings*, 583 U.S. at 297).

And, to the extent that Respondents may rely on *Thuraissigiam* to deny this due process claim, the undersigned agrees with the court in *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668 (W.D. Tex. 2025) and other courts in the Fifth Circuit that have found *Thuraissigiam* to be distinguishable in this context. *See* 801 F. Supp. 3d at 681-85; *see also, e.g.*, *Perez v. Noem*, No. 3:25-cv-2920-K-BN, 2025 WL 3532430, at *4 (N.D. Tex. Nov. 14, 2025), *rec. accepted*, 2025 WL 3530951 (N.D. Tex. Dec. 9, 2025); *George*, 2025 WL 3852946, at *4-*5; *Vieira v. De Anda-Ybarra*, ___ F. Supp. 3d ___, No. EP-25-cv-432-DB, 2025 WL 2937880, at *4-5 (W.D. Tex. Oct. 16, 2025); *Gonzales*

*Martinez v. Noem*, No. EP-25-cv-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. EP-25-cv-361-KC, 2025 WL 2792588, at *7-10 (W.D. Tex. Oct. 2, 2025); *Hernandez-Fernandez v. Lyons*, No. 5:25-cv-773-JKP, 2025 WL 2976923, at *7-8 (W.D. Tex. Oct. 21, 2025).

In *Thuraissigiam*, "[t]he [Supreme] Court did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge the fact or length of their detention, as [Alcala] does here." *Lopez-Arevelo*, 801 F. Supp. 3d at 682. Unlike in *Thuraissigiam*, where the petitioner challenged his deportability and the denial of his asylum admission, Alcala challenges his detention without a bond hearing. *See* 591 U.S. at 114-15.

In the context of detention under Sections 1225(b) and 1226(a), the Fifth Circuit has "expressly left open the constitutional due process question" for lower courts to consider. *Lopez-Arevelo*, 801 F. Supp. 3d at 682 (citing *Jennings*, 583 U.S. at 312).

The petitioner in *Thuraissigiam* was also stopped and detained "within twenty-five yards of the border" and was not released or permitted to reside in the United States. 591 U.S. at 114.

But Alcala has resided in here for more than three years after he was released into the United States on parole. *See* Dkt. No. 1 at 5; *Lopez-Arevelo*, 801 F. Supp. 3d at 683-84 (distinguishing *Thuraissigiam* because petitioner had resided in the United States for three years).

- 8 -

And, so, Alcala is entitled to procedural protections under the Fifth Amendment's Due Process Clause. And the undersigned will consider his claim that his detention violates his due process rights.

### B. *Mathews* Balancing Test

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (cleaned up). The three factors to consider are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (cleaned up).

"The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Id.* at 348 (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1976) (Frankfurter, J., concurring)).

#### 1. Private Interest

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause

protects." *Vieira*, 2025 WL 2937880, at *6 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690(2001)). Alcala alleges – and the government does not refute that he "was inspected, processed, and released into the United States on parole" in September 2022. *See* Dkt. No. 1 at 5. And, so, the undersigned cannot find that he did not acquire a "cognizable interest in his freedom from detention that deserves great weight and gravity." *Vieira*, 2025 WL 2937880, at *6.

The first factor therefore weighs in favor of Alcala.

### 2. Risk of Erroneous Deprivation and Value of Additional Safeguards

As to the second factor, Alcala is in custody. Without a bond hearing, he will likely remain in custody. And the risk of an arbitrary deprivation is greater given the BIA's new interpretation of Section 1225(b)(2). *See Vieira*, 2025 WL 2937880, at *7, *Lopez-Arevelo*, 801 F. Supp. 3d at 686.

"[A]gency decisionmakers regularly 'conduct[] individualized custody determinations … consider[ing] flight risk and dangerousness.'" *Gonzales Martinez*, 2025 WL 2965859, at *4 (cleaned up). So a bond hearing would "give [Alcala] the opportunity to be heard and receive a meaningful assessment of whether he is dangerous or likely to abscond." *Lopez-Arevelo*, 801 F. Supp. 3d at 686.

And, so, a bond hearing would reduce the risk of an erroneous deprivation of Alcala's liberty.

So the second factor also weighs in favor of Alcala.

### 3. Government's Interest

Respondents argue that the government "needs flexibility in policy choices rather than the rigidity often characteristic of constitutional adjudication when it comes to immigration regulation." Dkt. No. 7 at 26. But they do not then persuasively explain their interest in "flexibility" while detaining Alcala without bond. And, in any event, the government's inarguable interest in ensuring that Alcala appears for his removal proceedings "would be squarely addressed through a bond hearing." *Gonzalez Martinez*, 2025 WL 2965859, at *4.

And, so, the third factor too weighs in favor of Alcala.

Because all three *Mathews* factors support Alcala, the undersigned finds that denying him a bond hearing under Section 1225(b)(2) deprives him of his procedural due process rights under the Fifth Amendment.

## IV. Other Claims

Because the denial of a bond hearing violates Alcala procedural due process rights and the INA, the undersigned declines to address any substantive due process or Administrative Procedure Act claims that Alcala may make. *See Santiago*, 2025 WL 2792588, at *6 n.2 ("[B]ecause the Court grants [the petition] on procedural due process grounds, the Court need not reach [the petitioner's] substantive due process … claims.").

## V. TRO

As "[a] TRO is simply a highly accelerated and temporary form of preliminary

injunctive relief," "[t]o obtain a temporary restraining order, an applicant must show entitlement to a preliminary injunction." *Horner v. Am. Airlines, Inc.*, No. 3:17-cv-665-D, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (cleaned up).

But granting a preliminary injunction "is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Grp., Inc. v. C.D.L. Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989))

And, so, to obtain preliminary injunctive relief, a movant must unequivocally "show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (cleaned up); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

And the Fifth Circuit "has repeatedly cautioned that [such relief] should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (cleaned up).

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the

merits." *Canal Auth.*, 489 F.2d at 576 (cleaned up).

So the decision on a motion seeking a TRO or preliminary injunction does "not amount to a ruling on the merits" of a plaintiff's claims, *Jonibach Mgmt. Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 (5th Cir. 2014), considering that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits" and "may be challenged at a later stage of the proceedings," *id.* (cleaned up).

In short, a TRO or preliminary injunction is not a device "to give a plaintiff the ultimate relief he seeks" through his claims. *Peters v. Davis*, No. 6:17CV595, 2018 WL 11463602, at 2 (E.D. Tex. Mar. 28, 2018); *accord Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023) ("This Court has repeatedly recognized that the purpose of injunctive relief is to preserve the status quo; it is not to give the movant the ultimate relief he seeks."); *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021) ("The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur." (cleaned up)). And, so, a motion or application for a TRO or preliminary injunction is properly denied when it is no more than a "motion to win."

Here, the arguments supporting Alcala's request for a TRO focus on the harms of mandatory detention without bond.

So, insofar as Alcala seeks the same ruling on the merits as the habeas petition, the undersigned finds that the request for a TRO improperly seeks ultimate relief. *See Buenrostro-Mendez*, 2025 WL 2886346, at *4 (denying TRO as moot because it sought the same relief as the petitioner's habeas petition – to release the petitioner from custody or order a bond hearing).

And, so, the Court should deny the request for a TRO.

### Remedy

Most courts confronting this issue have determined that the appropriate relief is a bond hearing. *See Lopez-Arevelo*, 801 F. Supp. 3d at 687-88 (collecting cases); *Vieira*, 2025 WL 2937880, at *7 (collecting cases). And, so, the Court should order that Alcala be given a bond hearing before an IJ and decline to award any other requested relief at this time.

That said, in at least one recent case in this district, although the Court ordered that relief – and the government did not appeal – the IJ still refused to obey the Court's order to provide it. *See Parada-Hernandez*, No. 3:25-cv-2729-K-BN (N.D. Tex.), Dkt. Nos. 18, 19, & 20.

And, so, if the Court accepts or adopts the recommendations set out above and requires that Alcala receive a bond hearing, the undersigned further recommends that the Court enter a judgment tailored to enforce compliance with the Court's order. *See, e.g., Amelia C. P. v. Noem*, No. 3:25-cv-2872-K-BK, 2025 WL 3653872, at *3-*4 (N.D. Tex. Dec. 17, 2025) (requiring (1) that the respondents provide the petitioner

"with a bond hearing before an immigration judge at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's continued detention" or "release Petitioner … from custody, under appropriate conditions of release, to a public place"; (2) that the respondents file a notice by 5:00 p.m. six days after entry of the Court's order requiring that a bond hearing be provided "that informs the Court whether Petitioner … has been released from custody. If Petitioner … has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the immigration judge's decision"; and (3) that "if Petitioner … is released, Respondents [must] to notify Petitioner['s] counsel of the exact location and exact time of her release as soon as practicable and no less than two hours before her release").

## Recommendation

The Court should grant in part Petitioner Samuel Antonio Alcala-Garcia's application for a writ of habeas corpus under 28 U.S.C. § 2241 [Dkt. No. 1] and require Respondents to provide him with a bond hearing before an immigration judge by a date certain and then require Respondents to provide notice to the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections

within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judges' findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: January 26, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE